<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRANKO KRSTIC, et al.<br><br>Plaintiffs,<br><br>v.<br><br>J.R. CONTRACTING &<br>ENVIRONMENTAL CONSULTING, et al.<br><br>Defendants. | Civil Action No.: 09-2459<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on two motions: (1) Defendants J.R. Contracting & Environmental Consulting, Jadranko Bijelonic, and Novak Bijelonic's ("Defendants") renewed motion to dismiss ("Defendants' Motion"); and (2) Plaintiffs Branko Krstic, et al.'s ("Plaintiffs") renewed motion for conditional certification and judicial notice ("Plaintiffs' Motion").

**I**[1]

According to Plaintiffs' First Amended Complaint, Defendant J.R. Contracting & Environmental Consulting ("J.R. Contracting") (located in Wayne, New Jersey) – and two of J.R. Contracting's officers, Jadranko Bijelonic (resident of Wayne, New Jersey) and Novak Bijelonic

---

[1] The facts presented in this Memorandum and Order are taken from Plaintiffs' amended collective action complaint ("Plaintiffs' First Amended Complaint").

1

(resident of Wayne, New Jersey) (collectively, the "J.R. Contracting Officers") – from approximately 2003 through today have engaged in a policy and practice of requiring employees to regularly work in excess of forty (40) hours per week without providing overtime compensation as required by applicable federal and state law.

      Plaintiffs are current and former employees of J.R. Contracting who performed construction-related trades. More specifically, the parties named as plaintiffs are:

      *      Branko Krstic (resident of Paterson, New Jersey). Branko Krstic contends that he performed hazardous abatement and demolition work from January 1999 through May 2005. He alleges that he worked 8-10 hours per day, 5 to 6 days per week. He was paid between $22.00 and $26.00 per hour. Branko Krstic claims that he was never paid overtime compensation to which he was entitled.

      *      Tica Milenko (resident of Paterson, New Jersey). Tica Milenko contends that he performed mostly demolition work from August 2000 through March 2009. He worked 8 - 10 hours per day, 6 to 7 days per week. He was paid $18.00 to $25.00 per hour. Tica Milenko claims that he was never paid overtime compensation to which he was entitled.

      *      Nove Koroskoski (resident of Lodi, New Jersey). Nove Koroskoski contends that he performed hazardous abatement and demolition work from November 1997 through July 2007. He worked 8-10 hours a day, 6 to 7 days per week. He earned $25.00 to $30.00 per hour. Nove Koroskoski claims that he was never paid overtime compensation to which he was entitled.

      *      Mladen Drascovici (resident of Paterson, New Jersey). Mladen Drascovici contends that he worked as a driver from 2001 through April 2009. He worked 10 -12 hours a day, 5 to 7 days

per week. He earned $18.00 to $19.00 per hour. Mladen Drascovici claims that he was never paid overtime compensation to which he was entitled.

According to Plaintiffs, J.R. Contracting – under the direction of the J.R. Contracting Officers – had an ongoing practice of depriving employees of the overtime compensation for work performed in excess of 40 hours per week as mandated by federal and state law. Plaintiffs allege that the J.R. Contracting Officers "dominated" control over J.R. Contracting, including the supervision of employees, and the payment of employees' salaries.

Plaintiffs seek to recover wages and benefits to which Plaintiffs and other similarly situated employees were statutorily and contractually entitled for construction-related work they performed in New Jersey and New York pursuant to various publically-funded contracts. J.R. Contracting entered into contracts with government entities, such as the City of New York ("NYC"), the State of New York ("NYS"), the New York City Department of Design and Construction ("DDC"), the New York City Department of Health and Mental Hygiene ("DHMH"), the New York City Department of Citywide Administrative Services ("DCAS), the New York Department of Sanitation ("DOS"), and the State of New Jersey, as well as various school districts, fire districts, library districts, and other municipal agencies throughout New York and New Jersey (collectively, the "Public Works Projects"). J.R. Contracting undertook and performed the Public Works Projects between May 2003 and the present.

Plaintiffs additionally named as defendants two surety bonding businesses – First Sealord Surety, Inc. ("Sealord") and American Manufacturers Mutual Insurance Company ("American Manufacturers"). According to Plaintiffs' First Amended Complaint, both Sealord and American Manufacturers agreed to pay employees' unpaid wages and supplemental benefits if J.R. Contracting

"failed to pay these wages" on most Public Works Projects.  This Court has previously dismissed without prejudice Plaintiffs' claims against American Manufacturers.[2]

## II

Defendants contend that this case should be dismissed in its entirety.  In particular, Defendants maintain that dismissal is appropriate because Plaintiffs signed arbitration agreements requiring employees to pursue any recourse for failure to pay appropriate wages through arbitration.  According to Defendants, Plaintiffs have not pursued Plaintiffs' wage claims in arbitration, and thus this case should be dismissed.

To the contrary, Plaintiffs assert that it would be unconscionable for this Court to enforce the arbitration agreements.  According to Plaintiffs, the employees at issue are Serbian immigrants who have only a limited grasp on the English language.  According to Plaintiffs, J.R. Contracting requested that each employee sign the arbitration agreements at the J.R. Contracting office, and J.R. Contracting did not provide the employees with the assistance of an interpreter or lawyer.

The arbitration agreements state that any claims relating to employees' employment must be submitted to arbitration. Upon beginning work with J.R. Contracting, Plaintiffs Branko Krstic, Tica Milenko, Nove Koroskoski, Zdenko Krajina, Milovan Banjac and Tomasz Owczarski each executed such binding agreements.  Each arbitration agreement provides in pertinent part:

> Any claim, controversy or dispute (hereinafter 'claim') that I have against J.R. Contracting, or that J.R. Contracting has against me, relating to my employment or the termination of my employment, shall be settled by binding arbitration in accordance with the rules of

---

[2] Defendants' Motion did not provide any argument for why Sealord should be dismissed from this case.  As a result, this Court will not address this here, and Sealord will remain a defendant in this litigation.

4

>the American Arbitration Association in effect at the time such claim arises. I accept and consent to final and binding arbitration as an alternative to civil litigation and hereby waive any right that I may have to resolve any employment-related claim through any other means, including a trial by judge or jury.
>
>The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation; claims alleging breach of any contract or covenant (express or implied); tort claims; defamation claims; claims alleging discrimination or harassment; retaliation claims; claims alleging wrongful termination; claims for employee benefits including health care benefits or pension benefits; and any other claims alleging any violation of any federal, state or other governmental law, statute, regulation or ordinance . . . .

Additionally, each arbitration agreement provides that "[m]y signature below indicates that I have received and read a copy of this Agreement to Arbitrate, that I fully understand it, and that I agree to its provisions."

Plaintiffs generally indicate that they can read and speak Serbian, but cannot read and speak English. As such, Plaintiffs maintain that they did not understand the arbitration agreements. Plaintiffs also assert that Plaintiffs felt forced to sign the arbitration agreements. Plaintiffs additionally allege that until Defendants filed the original motion to dismiss, Plaintiffs did not even know what the term "arbitration" meant.

Branko Krstic was an employee of J.R. Contracting from January 1999 through May 2005. On January 10, 2000 Branko Krstic executed the above-referenced arbitration agreement. Although Branko Krstic alleges that he did not understand it, during his deposition, Branko Krstic testified that he generally never signs a document without having his daughter – who speaks "perfect" English – review and explain the document. In addition, Branko Krstic has signed numerous legally-binding documents in the past, including income tax forms, medical information forms, mortgage documents,

5

a loan application, and an authorization to release information.  Branko Krstic has also completed a course in basic English that the Paterson Adult Education Program offered.

Tica Milenko was an employee of J.R. Contracting from September 2000 through March 2009.  On December 9, 2000, Tica Milenko signed the above-referenced arbitration agreement allegedly without understanding it.  During his deposition, Tica Milenko admitted to several factors which may have enabled Milenko to read and understand the arbitration agreement.  Tica Milenko's supervisor's wife, a Serbian-speaking clerk for J.R. Contracting, provided Tica Milenko with the arbitration agreement.  Tica Milenko, however, chose to not ask her a single question about the arbitration agreement before signing the arbitration agreement.  Tica Milenko also stated that he signs English-written documents "all the time."  In the course of his employment with J.R Contracting, Milenko executed income tax form and medical forms, and also obtained various job-related certifications.

J.R. Contracting employed Milovan Banjac from December 1998 through June 2005.  On January 10, 2000, Milovan Banjac signed the arbitration agreement without understanding it.  During the course of his deposition, Milovan Banjac admitted that he often attains his daughter's translation assistance when signing English documents.  Milvoan Banjac, however, never requested to take the arbitration agreement home for his daughter's review.  Moreover, Milovan Banjac never asked Jadranko Bijelonic – or any of the other Serbian-speaking employees – to translate the arbitration agreement.  Milovan Banjac testified that he regularly signs other English-written documents.

Plaintiff Zdenko Krajina was an employee of J.R. Contracting from May 2001 through April 2009.  On May 8, 2001, Zdenko Krajina signed the arbitration agreement.  Zdenko Krajina testified that he did not ask Jadranko Bijelonic any questions about the arbitration agreement before signing

6

it. Zdenko Krajina also admitted that he had executed many other English-written documents, including a lease agreement, medical questionnaire, income tax forms, as well as other written employment policies of J.R. Contracting. Zdenko Krajina also testified that he was *not* threatened or coerced into signing the arbitration agreement.

Plaintiff Nove Koroskoski was employed by J.R. Contracting from November 1997 through July 2007. On January 9, 2000, Nove Koroskoski signed the arbitration agreement. At his deposition, Nove Koroskoski testified that his two sons interpreted and translated mortgage documents when he purchased a home. Despite this, Nove Koroskoski never requested that the arbitration agreement be given to his sons for translation. In addition, Nove Koroskoski never asked Jadranko Bijelonic any questions about the arbitration agreement.

Tomasz Owczarski was employed by J.R. Contracting from the fall of 1997 through July 2009. On January 7, 2000, Tomasz Owczarski signed the arbitration agreement. At his deposition, Tomasz Owczarski testified that his wife usually explains to him any documents that he does not understand. Despite this, Tomasz Owczarski never asked his wife to review the arbitration agreement. In addition, Tomasz Owczarski attended and successfully completed a series of asbestos supervisor training courses in English. Moreover, Tomasz Owczarski scored 90% on the English-written exam at the completion of his courses.

## **III**[3]

Plaintiffs seek to pursue a collective action under the Fair Labor Standards Act ("FLSA"). Under the FLSA, employers are required to pay FLSA-covered employees a minimum wage and

---

[3] This Court relied upon Judge Hedges' analysis in *Sheinberg v. Sorensen,* 2006 WL 2460649, at * 2 (D.N.J. Aug. 22, 2006) in conducting the following analysis.

overtime for any hours that the employee works in excess of forty hours per week. *Aquilino v. Home Depot, U.S.A., Inc.*, 2011 WL 564039, at * 5 (D.N.J. Feb. 15, 2011 ) (*citing* 29 U.S.C. §§ 206, 207). An exemption to these mandatory requirements exists, however, for employees that serve "in a bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1).

If an employee has not been paid his/her minimum wage or overtime payments – and is not exempt from FLSA requirements – the employer is "liable to the employee . . . in the amount of [the employee's] unpaid minimum wages, or [the employee's] unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 216(b) of the FLSA provides a mechanism for the recovery of such unpaid wages and compensation, allowing "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring an action. "This type of action, known as a 'collective action,' allows potential class members who are similarly situated to the named plaintiffs to file a written consent with the court to opt in to the case." *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000).

After the FLSA was first adopted in 1938, parties instituted a multitude of collective employee actions to recover overtime compensations. *See, e.g.*, *Deley v. Atl. Box & Lumber Corp.*, 119 F. Supp. 727, 728 (D.N.J. 1954). Not all participants were identified, however, which subjected employers to an uncertain number of judgments. *Ibid.* Consequently, the Portal-to-Portal Act of 1947 was enacted. *Sheinberg,* 2006 WL 2460649 at * 2. The intended effect of the Portal-to-Portal Act of 1947 was to "make these uncertain plaintiffs certain, and actual participants, so that defendants could know the parties and the charges with which they were to be faced." *Deley*, 119 F. Supp. at 728. As such, the FLSA provides for the efficient disposition of issues while conserving

judicial resources. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 181 (1989). This Court is convinced that the FLSA combines the interests of justice – by protecting similarly injured employees – with notions of fairness to the employer – by granting the employer the right to a list of the class participants – with the preservation of judicial resources.

As mentioned, the FLSA provides in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216. In *Pentland v. Dravo Corp.*, 152 F.2d 851, 853 (3d Cir. 1945), the Third Circuit held that collective actions under the FLSA are "spurious" rather than "true" class actions. Such a "spurious" FLSA action is not binding on similarly situated individuals who have not opted in to the lawsuit. *Sheingberg*, 2006 WL 2460649 at * 3 (*citing Pentland*, 152 F.2d at 853 ).

Two factors must be met in order for a case to proceed under the FLSA: (1) the proposed class members must be similarly situated; and (2) these class members must consent in writing to opt in to the suit. *Hoffmann-La Roche, Inc.*, 118 F.R.D. at 405. "Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class." *Morisky*, 111 F. Supp. 2d at 496 (citation omitted). In *Hoffmann-La Roche, Inc.*, the court noted that the issue of "when" the "similarly situated" analysis should be conducted "has not received extended consideration." 118 F.R.D. at 405. Moreover, the court acknowledged that the extent and nature of the proofs necessary to meet the similarly situated requirement has never been adequately clarified. *Hoffmann-La Roche, Inc.*, 118 F.R.D. at 407 ("The relevant statutes and caselaw do not prescribe clear rules for determining whether putative class members are similarly situated.") (citation omitted).

It is clear, however, that Plaintiffs must show only that "[Plaintiffs'] positions are similar, not identical" to the positions held by the putative class members. *Hoffmann-La Roche, Inc.*, 118 F.R.D. at 405 (internal quotation marks and citation omitted). In fact, certain courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Morisky*, 111 F. Supp. 2d at 497 (citations omitted). Because courts apply such a liberal standard at this early stage, courts are permitted to reverse or modify the courts' findings should new facts be uncovered regarding the nature of the putative class members. *Hoffmann-La Roche, Inc.*, 118 F.R.D. at 407 ("[N]othing would appear to prevent the court from modifying or reversing a decision on 'similar situations' at a later time in an action, as new facts emerge.") (citations omitted).

This Court is convinced that there are approximately 100 similarly situated employees who worked as hazardous abatement workers, demolition workers, teamsters, and in other construction-related trades. Moreover, there is little dispute that these employees were *not* exempt from FLSA overtime laws. *See* 29 U.S.C. § 213(a)(1). As such, there are 100 similarly situated employees who claim that J.R. Contracting did not adequately pay them for overtime.

As mentioned, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Hoffmann-La Roche, Inc.*, 118 F.R.D. at 407 (citations omitted). In *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp.2d 234, 238 (N.D.N.Y. 2002), the court explained the relatively minimal level of proof necessary to demonstrate that there exists a "similarly situated" class of potential plaintiffs:

> In addressing a request for court-authorized notice of a class action under FLSA, a court must consider whether plaintiffs have demonstrated the existence of a definable class of potential

> plaintiffs who are 'similarly situated.' 29 U.S.C. § 216(b). To meet this burden, plaintiffs need only 'mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y.1998); *accord Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.1997); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y.1995) ('[P]laintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'). A court should not evaluate the merits of plaintiffs' claim in determining whether class notice is warranted. *See Hoffmann*, 982 F. Supp. at 262.

The parties named as plaintiffs in Plaintiffs' First Amended Complaint were at one time J.R. Contracting employees. Moreover, each of these plaintiffs claims to have worked more than forty (40) hours per week without receiving overtime pay from J.R. Contracting. Defendants do not specifically deny these contentions. Rather, Defendants have orally indicated that Defendants maintain defenses to Plaintiffs' claims.

Defendants' primary defense is that each of the named plaintiffs signed an arbitration agreement. Defendants contend that these arbitration agreements deny this court subject matter jurisdiction. As such, Defendants allege that the arbitration agreements require the court to *dismiss* the lawsuit. This argument is mistaken. In fact, the applicable statute – 9 U.S.C. § 3 – requires only that the district court *stay* an action where "the issue involved in such suit or proceeding is referable to arbitration under such an [arbitration agreement]." This Court is satisfied that the action is referable, but dismissal is not required – a stay is appropriate.

Plaintiffs contend that the arbitration agreements should be denied in their entirety because the arbitration agreements were written in English, and Plaintiffs speak and read only Serbian. The case of *Morales v. Sun Constructors*, 541 F.3d 218 (3d Cir. 2008) is instructive on this point. In

11

*Morales* – like in the case at issue – the plaintiff did not understand English, but signed an arbitration agreement. 541 F.3d at 220. The Third Circuit recognized that an illiterate man may bind himself to a contract. *Id.* at 222 (citation omitted). In addition, the *Morales* Court stated that if any employee is uncertain of the terms of an agreement, then that employee has the "duty to learn and know the contents of a contract before he signs and delivers it." *Ibid.* (internal quotation marks and citation omitted). In particular, Judge Chagares wrote:

> [The plaintiff], in essence, requests that this Court create an exception to the objective theory of contract formation where a party is ignorant of the language in which a contract is written. We decline to do so. In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable.

*Id.* at 222 (citation omitted).

This Court finds no reason to deviate from the holding in *Morales*. Many of the named plaintiffs acknowledged that they often reviewed critical legal documents with other family members in order to understand the terms of these binding legal documents. These named plaintiffs failed to take this precautionary measure here. In addition, there is no showing of any fraud or misrepresentation by J.R. Contracting. As such, the arbitration agreements should be enforced.

A practical issue arose at oral argument regarding whether the arbitration forum would provide for the full range of remedies available under the FLSA. According to Defendants' counsel, this is not an issue because arbitrators often impose unpaid and/or underpaid wages, liquidated damages and other costs as allowable under the FLSA. Furthermore, Defendants' counsel generally stated that FLSA remedies are commonplace in wage arbitration.

Another issue that arose at oral argument is whether all of the similarly situated employees actually signed arbitration agreements. According to Plaintiffs' counsel, it would be unfair to require

similarly situated employees to submit to arbitration if these employees never signed arbitration agreements.[4]

At the appropriate time, this Court will most likely subdivide similarly situated employees into two categories: (1) one subclass for employees who have signed arbitration agreements and, and those claims will be transferred to arbitration; and (2) one subclass for employees who have not signed arbitration agreements, and those claims will remain before this Court.

## **IV**

In enacting the above-referenced subdivision, this Court must ascertain which claims are viable, and which claims are time-barred by the statute of limitations. Plaintiffs contend that the six-year statute of limitations under New York law should apply. *See Guzman v. VLM, Inc.*, 2007 WL 2994278, at * 6 (E.D.N.Y. Oct. 11, 2007). The Court disagrees. Plaintiffs have sought – and the Court has approved – conditional certification under the FLSA. The FLSA is a federal statute, and is applicable to all employees, whether they reside in New Jersey or New York. As such, this case can proceed more efficiently with this collective action under the FLSA. The statute of limitations under the FLSA is two years unless a willful violation is alleged, and then the limitation period is three years:

> [I]f the cause of action accrues on or after May 14, 1947 [then the cause of action] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within *three years* after the cause of action accrued.

---

[4] Defendants' counsel stated at oral argument that only a few, if any, employees did not sign arbitration agreements..

29 U.S.C. § 255(a) (emphasis added). Based on same, Plaintiffs' collective action will extend three years backwards from the date on which Plaintiffs filed Plaintiffs' original complaint (May 21, 2009). As such, Plaintiffs may proceed with claims that accrued on or after May 21, 2006.

**ORDER**

The Court, having reviewed the parties' submissions and having heard oral argument on February 14, 2011, and for good cause shown;

IT IS on this 16th day of March 2011 ORDERED:

(a)  Defendants' Motion (Docket Entry 52) is granted in part and denied in part;

(b)  Plaintiffs' Motion (Docket Entry 53) is granted in part and denied in part;

(c)  Conditional certification of a collective action pursuant to section 216 of the FLSA is approved as follows:

> [Plaintiffs] and all current and former employees of J.R. Contracting who worked in construction-related trades, including, but not limited to, hazardous abatement workers, demolition workers, and teamsters, related to J.R. Contracting's construction business from May 21, 2006 through the present who were hourly-paid employees who did not receive overtime wages. Corporate officers, shareholders, directors and administrative employees are not part of the above-defined class;

(d)  The parties shall submit to the Court a proposed Order of Notice of the Collective Action by March 31, 2011; and

(e)  The parties shall list the name and address of each employee who may fit within the definition as set forth in section (c) above.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.